EZRA B. HAYDEN, Respondent, *v.* THE STATE OF NEW YORK, Appellant.

To make a legal and permanent appropriation by the State, of land or water for the use of a canal, the quantity must be definitely ascertained and described so that the owner may know how much has been taken and what he is entitled to be compensated for.

In 1867, the canal board passed a resolution, by its terms approving a map for the permanent appropriation "of the Port Byron water power on the Owasco outlet for the feeder to the Erie canal," and declaring that "the water and lands necessary for said feeder are hereby permanently appropriated." The owners of the water power filed their claim for damages, and, in 1870, while it was pending, the canal board passed a resolution defining the quantity of water intended to be taken by the former resolution, by which it was fixed at a certain number of cubic feet per minute, not the whole stream. In 1871, an award was made to the owners, which was paid. In 1879, the state appropriated all the water in the race-way. Upon a claim of damages for this appropriation, *held,* that the resolution of 1867 was too indefinite to effect a legal appropriation, and was void; that the state officers, therefore, had power by subsequent action to make an appropriation of a limited quantity of water; and that the payment for this limited appropriation did not defeat the claim for the residue when it was taken.

In 1869, before trial of the first claim, the canal appraisers made a report to the legislature to the effect that the appropriation was of the entire water power. *Held,* that as the claimant was not a party to it, the report was not binding upon him.

(Argued April 21, 1892; decided May 6, 1892.)

APPEAL from an award and order of the Court of Claims, made December 19, 1889.

| | | |
|---|---:|---:|
| The claimant was awarded for land taken ....... | $21 | 49 |
| For water................................... | 1,000 | 00 |
| Total ...... ............................. | $1,021 | 49 |

The state concedes its liability for the land taken.

Further facts are stated in the opinion.

*S. W. Rosendale, Attorney-General,* for appellant. The state, by virtue of the resolution of the canal board adopted in 1867, and the appropriation made thereunder, became entitled to the use of the entire water of Owasco lake and outlet. (1 R. S. [8th ed.] 717, 732, §§ 16, 18; *Shaver* v. *Eldred,* 114 N. Y. 236; *S. M. Co.* v. *State,* 104 id. 562; *Sweet* v. *City of Syracuse,* 129 id. 316; *Gardner* v. *City of Newburgh,* 2 Johns. Ch. 161; *Smith* v. *City of Rochester,* 92 N. Y. 463; *Burbank* v. *Fay,* 65 id. 57; *Whitney* v. *State,* 96 id. 240; 1 R. S. [8th ed.] 738, 748, § 90.) The canal board, by the resolution of March 4, 1870, could not affect, define or limit the extent of the appropriation made in June, 1867. (*People ex rel.* v. *Canal Appraisers,* 9 Barb. 496; *People ex rel.* v. *Schuyler,* 69 N. Y. 242; *St. V. Asylum* v. *Troy,* 76 id. 108; *People* v. *Gardner,* 24 id. 583; *Delafield* v. *State of Illinois,* 26 Wend. 192; *State* v. *Hastings,* 10 Wis. 525; *Landers* v. *F. M. E. Church,* 97 N. Y. 119–124; *Dickinson* v. *City of Poughkeepsie,* 75 id. 65; *Donovan* v. *Mayor, etc.,* 33 id. 291; *Craighead* v. *Peterson,* 72 id. 279; *People* v. *Supervisors,* 52 id. 556–563; Laws of 1877, chap. 369; Laws of 1890, chap. 314; Laws of 1891, chap. 291; *People ex rel.* v. *Dayton,* 55 N. Y. 367; *In re M. S. Inst.,* 82 id. 142.) The court has the power to modify the award made herein. (Laws of 1887, chap. 507, § 10; *Sayre* v. *State,* 123 N. Y. 291.)

*H. V. Howland* for respondent.

FOLLETT, Ch. J. May 14, 1866, the state temporarily appropriated the water of Owasco lake and the Oriskany creek, under this resolution:

"*Resolved,* That the canal commissioners in charge of the middle and eastern divisions would not only be justified, but in view of the past and present scarcity of water on the Port Byron and eastern portion of the long levels of the Erie canal,

it is their duty to make a *temporary* appropriation of the waters of the Owasco lake and the Oriskany creek, as provided by the statute."

A claim for the damages under this appropriation was filed, but no appraisement was made, and the damages were afterwards included in the claim filed after the adoption of the resolution of June 19, 1867.

June 19, 1867, the state permanently appropriated the Port Byron water power on the Owasco outlet, pursuant to the following resolution:

" *Resolved*, That the map for the *permanent* appropriation of the Port Byron water power on the Owasco outlet for the feeder to the Erie canal, this day submitted by the state engineer and surveyor, is hereby approved and the water and lands necessary for said feeder are hereby *permanently* appropriated."

November 9, 1867, the Haydens filed their claim for compensation for the permanent appropriation of the waters of Owasco creek.  March 4, 1870, while the foregoing claim was pending and before it was tried, resolutions were adopted by the canal board defining the quantity of water intended by the resolution of June 19, 1867, to be permanently appropriated, by which it was fixed at 3,600 cubic feet per minute, and not of the whole stream.  The following is a copy of the resolutions of March 7, 1870:

" *Resolved*, That the map for the permanent appropriation of the Port Byron water power on the Owasco outlet for a feeder to the Erie canal, this day submitted by the state engineer and surveyor, is hereby approved and the water and lands necessary for said feeder are hereby permanently appropriated; and whereas, doubts have arisen as to the extent of such appropriation, therefore,

" *Resolved*, That the water and lands appropriated or intended to be appropriated by this board, was and is the water known as the Beach Mill water power, then claimed by the Bank of Auburn, being equal to power for ten run of stone and machinery, or equal to a flow of 3,600 cubic feet per

minute, under the head of 27 feet, with the right and power to keep in repair the 'Parks dam,' so-called, at the head of the race-way, also the race-way known as the Beach race-way, with the rights and privileges that the said Bank of Auburn had and acquired under said Beach, also the land necessary and as described or delineated on said map to convey the water to the canal from the end of said Beach race-way."

In June and July, 1870, evidence in *Hayden's* case was taken before the appraisers. March 11, 1871, the appraisers awarded him, as stated by the findings, $6,301.23, but as stated by the evidence, he was awarded $6,651.23.

November 17, 1871, the canal board increased the award to $8,183.74, which was paid. February 15, 1879, the state appropriated 368-1000 of an acre and all the water in the race-way crossing it, under which appropriation this claim for damages was filed June 23, 1879. January 4, 1882, the canal appraisers awarded $21.49 for the land taken, but nothing for the water. The claimant appealed and his appeal was heard before the Board of Claims, where, January 14, 1886, the award was reversed and a rehearing ordered. On the retrial the award now appealed from was made. The only question in this case is whether, under the permanent appropriation of June 19, 1866, the state acquired all of the water of Owasco creek. If it did the allowance of $1,000 is wrong; if it did not, it is right.

The attorney-general contends that the state permanently appropriated all of the water of the Owasco outlet by the resolution of June 19, 1867, and that the canal board had no power by the subsequent resolutions of March 4, 1870, to limit the quantity of water taken to " 3,600 cubic feet per minute under the head of 27 feet," though the resolution was passed before the damages were assessed. To make a legal and permanent appropriation of land or water for the use of a canal the quantity must be definitely ascertained and described, so that the owner may know how much he has lost and what he is entitled to be compensated for. If the water to be appropriated is described as *all* in a certain lake or all flowing in a particular

stream, such would undoubtedly be a sufficiently definite description.    But in this case the resolution did not state that *all* of the water of the outlet, or that any particular quantity or part of it was appropriated, and the description was too indefinite to effect a legal appropriation.    The original attempt to appropriate not being effective, the officers of the state had power by subsequent action to make a definite and permanent appropriation of a given quantity of water.    Under this limited appropriation the claimant's damages were ascertained and paid, and it would be inequitable to allow the state to successfully assert that the award was for all of the water instead of for 3,600 cubic feet per minute.    The report of the canal appraisers (Senate Doc. No. 56), made in 1869, to the effect that the appropriation was of the entire water power, was made before the claim filed November 9, 1869, was tried, the claimant was not a party to it and it is not binding on him.

The Board of Claims well decided, on sufficient legal evidence, that the state had not, prior to the appropriation of February 15, 1879, taken all of the water from the stream.

The order and award should be affirmed, with costs.

All concur,

Award affirmed.