THE PEOPLE ex rel. JAMES ECKERSON et al., Appellants, *v.* THE BOARD OF TRUSTEES OF THE VILLAGE OF HAVERSTRAW, Respondent.

Under the provisions of the general act "for the incorporation of villages" (Tit. 7, chap. 291, Laws of 1870), in reference to proceedings for the laying out of streets and for the condemnation of land for that purpose, it is for the board of trustees of a village to make a survey and definite description of the proposed street, and so, to determine in the first instance its boundaries and extent, and to give in the preliminary notice required to be posted "a correct description of the land to be taken."

The jury authorized to be summoned has but one function to perform, and that is "to determine and award" to the owners of the lands to be

taken their damages; they have no power to determine how long the proposed street is required to be, to make connection with an existing street, where there is a doubt as to the point of termination and extent of that street as a public highway, the determination of which is dependent upon questions of user or dedication.

A petition presented to the board of trustees of the village of Haverstraw, to institute proceedings under said act, asked for the laying out of a street over the lands of persons named, "and upon lands included in and forming part of Rockland street, *or so much thereof as may be necessary*" to form a connection between the north end of Rockland street and another street named which terminated in the center of Warren street. The proposed street was "more particularly described as follows, viz.: Beginning at a point in the center of Rockland street two hundred and ten feet southerly from the center of Warren avenue," and running thence upon a course specified to the center of said street. The proposed street was to be a continuation of Rockland street, the point of termination of which was in doubt, depending upon questions of dedication and user. The trustees passed a resolution laying out the proposed street, describing it and the lands to be taken in the language used in the petition, and by resolution reciting the proceedings, directed the summoning of a jury to ascertain the damages to the landowners. The jury made an award "for ninety feet of land taken to connect the northerly end of Rockland street with a public highway * * * at the center of Warren avenue." *Held*, that the order laying out the street was invalid, and conferred no jurisdiction to take further proceedings; and that the difficulty was not cured by the fact that the counsel for the trustees in the hearing before the jury limited the claim of the village to a strip of land ninety feet in length.

(Argued January 16, 1893; decided January 31, 1893.)

Appeal from order of the General Term of the Supreme Court in the second judicial department, made July 22, 1892, which affirmed the proceedings of defendant as trustees of the village of Haverstraw in acquiring lands of the relators for a public highway in said village.

The facts, so far as material, are stated in the opinion.

*Calvin Frost* for appellants. The general law for the incorporation of villages regulates the proceeding in question. The proceedings prior to the order for summoning the jury, were invalid. (Laws of 1870, chap. 291, § 1.) The method adopted by the board in summoning a jury was not warranted

by the statute, or the Constitution. (Laws of 1870, chap. 291, tit. 7, § 2; *Cruger* v. *H. R. R. R. Co.*, 12 N. Y. 190; *Clark* v. *City of Utica*, 18 Barb. 454.) There is no ground for the objection that the relators had a right to appeal to the county judge, and, therefore, a certiorari would not lie, under section 2122 of Code. (*People ex rel.* v. *Hubbard*, 63 N. Y. 391; *People ex rel.* v. *Hildreth*, 126 id. 365.)

*E. A. Brewster* for respondent. The proceedings before the jury and the award of the jury, are not properly here for review, because they are determinations of the jury and not of the board of trustees, and the writ is not directed to the jury; and for the further reason that the relators have an adequate remedy as to all questions concerning the valuation of their property by an appeal under the statute. (*People* v. *Harris*, 63 N. Y. 391; *People* v. *Hildreth*, 126 id. 360.) The order of the board of trustees directing the street to be opened was in all respects regular. (Laws of 1871, chap. 870.) The relators went to trial on the merits before this jury, and thereby waived any objection to the regularity of their selection. (*Baldwin* v. *Calkins*, 10 Wend. 167; *In re Washington Street*, 38 N. Y. S. R. 346.) The jury was summoned according to law. (Laws of 1871, chap. 870.) The method of drawing the jury above indicated was in all respects lawful, and was in fact a literal compliance with the statute. (Laws of 1870, chap. 291, § 2.) The objection to the qualifications of Ira J. Hunter, on the ground that he was a signer of the petition to the trustees to lay out the street, by which the proceedings were initiated is untenable. (*Buckley* v. *Drake*, 41 Hun, 384.) The testimony of James Finegan was admissible. (*Baldwin* v. *City of Buffalo*, 35 N. Y. 275.)

Andrews, Ch. J. It is conceded that the proceedings for laying out streets in the village of Haverstraw are governed by the provisions of the general act, chap. 291 of the Laws of 1870, "for the incorporation of villages." The provisions on this subject are contained in title seven. Villages incorpor-

ated under that act are constituted separate highway districts and the board of trustees of any village are made commis, sioners of highways in and for the village and are authorized to lay out and open streets therein under the conditions and circumstances specified (Tit. 7, § 1). The proceeding when taken adversely to the property owners to be instituted by petition of at least ten freeholders of the village, " which petition shall specify the improvement to be made, describe the land to be taken, state the owner or owners thereof, when known, and be filed in the office of the clerk of the village." The trustees, on the presentation of the petition, are required to meet and examine the same, " and if they decide the improvement shall be made, they shall so decide by resolution, to be entered in the minutes of the board." It is made their duty on deciding in favor of the improvement, thereupon to post in five public places in the village " a correct description of the lands to be taken for such improvement," together with a notice for the hearing of objections " that may be made to the taking of such lands or making such improvement," which notice is also to be served on the owners of the lands proposed to be taken. The trustees may after such hearing deny the petition, " or approve or declare by resolution, to be entered in their minutes, their intention to make the said improvement, and proceed to obtain possession of the lands described in the manner provided by the act." (Tit. 7, § 1.) The second section of the act authorizes the board, in case the damages are not agreed upon, " to cause a jury of six freeholders to be summoned to determine and award said damages."

In May, 1891, a petition of the requisite number of freeholders of the village of Haverstraw was presented to the board of trustees of the village for the laying out of a street or public highway in the village " upon the lands of James Eckerson, J. Esler Eckerson, Maria E. Eckerson, Harriet A. Eckerson, Sarah L. Eckerson and M. Bogert Eckerson, and upon lands now included in and forming part of Rockland street, *or so much thereof* as may be necessary to form a proper con-

nection between the street and highway recently dedicated by Brewster J. Allison, Esq., to said village, which terminates in the center of Warren avenue and the north end of Rockland street as it now exists, and which are more particularly described as follows, viz. : Beginning at a point in the center of Rockland street, two hundred and ten feet southerly from the center of Warren avenue, as it is laid out on what is known as the map of the Allison farm, and as it was also laid out by the order of the commissioners of highways in the year 1868, and was formerly traveled and used, and running thence north one-fourth of a degree west two hundred and ten feet to the center of Warren avenue ; the said line above described to be the center of the proposed street, and said street to be of the width of fifty feet, that is to say, twenty-five feet on either side of said center line."

It is the obvious construction of this petition that it asked for the taking of such part only of the strip of land described in the petition, for the proposed street, as should be necessary to connect Warren avenue and the north end of Rockland street. If a strip two hundred and ten feet in length was required for that purpose, then the petitioners prayed that land to that extent should be taken, if not so required, then that only such part of said strip " as may be necessary," should be taken and appropriated for the proposed street. The petitioners left it to the trustees to determine how far the north end of Rockland street was from the center of Warren avenue, and whether the strip of land to be taken should be 210 feet in length, or less, was to depend upon the ascertainment of that fact.

The situation will be more clearly understood by a short explanation. The street petitioned for, was to run northerly and southerly, paralled with the Hudson river. Warren avenue ran from the river, at right angles to the proposed street. North of Warren avenue one Allison had dedicated a North and South street, terminating on the south at Warren avenue. The proposed street would form an extension southerly of the street dedicated by Allison, and was to extend so

1893.] People ex rel. Eckerson et al. *v.* Trustees, etc. 93

Opinion of the Court, per Andrews, Ch. J.

far southerly from Warren avenue as would be required to make a connection with the north end of Rockland street, a highway already existing. The plan, if carried out, would make a continuous street all along the river front. How far North Rockland street extended was it seems in doubt. It depended upon questions of dedication and user. The board of trustees after receiving the petition and after having taken the preliminary proceedings prescribed in the statute of 1847, passed a resolution laying out the proposed street, describing the street and the lands to be taken in the precise language used in the petition. The board thereby necessarily left the length of the proposed street uncertain and consequently the extent of the lands to be taken. They then by resolution, reciting the previous proceedings, directed the summoning of a jury to ascertain the damages of the owners of the lands, and the jury after a protracted hearing awarded the relators the sum of $92, " for ninety feet of land taken to connect the northerly end of Rockland street, with a public highway dedicated to said village by Brewster J. Allison, at the center of Warren avenue." The substance of the proceeding was that the board of trustees remitted to the jury the determination of the question, how far North Rockland street extended, and the jury having decided that it extended to within ninety feet of Warren avenue, the jury awarded compensation for land for that distance only.

We are of opinion that it was for the trustees to determine in the first instance the boundaries and extent of the road to be opened and the extent of the land to be taken; in other words, to make a survey and definite description of the proposed street. The statute requires that the trustees in the preliminary notice shall give " a correct description of the lands to be taken." The statute can only be satisfied by a reasonably accurate description by boundaries or fixed monuments. How far the road was required to be laid to accomplish the purpose desired, it was for the board to determine. If this was uncertain because of the uncertainty of the extent of the dedication or user of Rockland street, the board could

not shift the responsibility of accurately defining the extent of the proposed street and place it upon the jury. The jury had but one function, viz., to determine the damages to the land owners whose lands should be taken. They had no power to determine how long the street should be, depending upon their judgment on the questions of user or dedication of the existing street, or its extent as a public highway. It may be that where by the order laying out, the termini of the proposed street are accurately defined, the jury may, for the purpose of ascertaining the damages, inquire whether any public easement already exists over the land or any part thereof. (See *Baldwin* v. *City of Buffalo*, 35 N. Y. 375.) But the function of determining what land shall be taken, and where and for what distance a street shall extend, is separate and distinct from that which alone belongs to the jury, viz.: the ascertaining of damages for lands described and defined in the order laying out the street or highway. The act authorizes an appeal from the award only, and the amount is the only question which can be reviewed thereon.

We are of opinion that the order laying out the street was invalid and conferred no jurisdiction to take the further proceedings and that the difficulty was not cured because the counsel for the trustees in the course of the hearing before the jury, limited the claim of the village to a strip of land ninety feet in length. The relators objected to the successive proceedings as they took place and have in no way waived their rights. It is unnecessary to consider the other objections relied upon. The result is that the order of the General Term should be reversed and the proceedings of the board of trustees set aside, with costs in all courts.

All concur.

Order reversed.